IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KERIAN N. PELENAH,  Plaintiff, | : : : | |
| v. | : : | CIVIL ACTION NO. 25-CV-2972 |
| UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM  Defendant. | : : : | |

### MEMORANDUM

**COSTELLO, J.**                                                                                                       **AUGUST 18, 2025**

Kerian N. Pelenah commenced this *pro se* civil action alleging claims of employment discrimination and retaliation by Defendant University of Pennsylvania Health System ("Penn Health"). (ECF No. 1.) He also seeks to proceed *in forma pauperis* (ECF No. 2) and to have counsel appointed (ECF No. 3). For the following reasons, the Court will grant Pelenah leave to proceed *in forma pauperis* and dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. The motion to appoint counsel will be denied.

### I.    FACTUAL ALLEGATIONS[1]

Pelenah filed his Complaint using the Court's preprinted form for use by unrepresented litigants to file employment discrimination claims. By checking a box on the form, he indicates that he is bringing a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"). (Compl. at 4.) Pelanah, who is from Liberia, asserts that he was retaliated against and terminated based on his national origin. (*Id*. at 5-6.)

---

[1] The allegations are taken from Pelenah's form Complaint and attached documents ("Compl."). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

Penn Health hired Pelenah as a Patient Services Associate in September 2021 and assigned him to the Department of Ophthalmology. (*Id*. at 15.) His duties included "assisting the practice/department in maintaining patient/customer focus, supporting the delivery of high-quality care, sharing a passion for patient and customer-centered care, and assisting in meeting or exceeding patient satisfaction and financial/operational targets." (*Id*.) He was promoted in 2023 or early 2024 to Access Center Associate II, cross-trained to work in the Department of Pain Management, and received an increase in his hourly salary. (*Id*.)

Pelenah asserts that, throughout his employment with Penn Health, he was "critical of practices taking place within [his] unit concerning how others performed their duties." (*Id*. at 11.) In June 2023, Pelenah asked to review his personnel file and a transcript of his job interview for an "ASA III position." (*Id*. at 16.) The operations manager, Elisa Williams, denied access to his personnel file and responded that she had no written documentation from the interview. (*Id*.) Pelenah states that Williams thereafter issued a written warning citing him for unscheduled absences and tardiness. (*Id*.)

In August or September of 2023, Williams issued Pelenah a second written warning for unscheduled absences and lateness. (*Id*.) In response, Pelenah initiated a request with a Human Resources (HR) manager for review of the decision. (*Id*.) He admitted to clocking in late one day, but asserted that, on another day cited, he felt ill and could not remain at his desk. (*Id*. at 9.) He argued to HR that the two warnings were "deliberate acts of harassment, intimidation, and retaliation" in response to Pelenah's June 2023 request to access his personnel file and interview transcript. (*Id*. at 9, 16.) Pelenah met with the Associate Director of Operations for Patient Access, Megan Phillips, and conveyed his concerns about Williams and requested a transfer. (*Id*. at 16.) Phillips assured him that the issue would be addressed but did not grant the transfer

request.  (*Id*.)  He never received a formal communication about any final conclusions from the review.  (*Id*.)

His third disciplinary warning occurred in April 2024, after Pelenah exchanged emails with the management team about "a perceived scheduling error that [he] had questioned."  (*Id*. at 15.)  His supervisor, Lea Anderson, notified him verbally and via email that he was being placed on a final written warning for performance.  (*Id*.)  Days later, Williams "issued [ ] a progressive step (third warning) for allegedly failing to follow policy/procedure."  (*Id*.)  Pelenah submitted a "Managerial Decision Review Request Form" with HR on April 23, 2024, claiming that the management team had targeted him with harassment and retaliation, and he requested "a full investigation" by HR.  (*Id.* at 48, 52.)  Soon after that, in May, staff at Penn Health allegedly began sending him "deriding messages;" for example, staff "informed us that members of staff in this group were only to refer to two other members of staff for questions or concerns."  (*Id*. at 11.)

On June 4, 2024, HR concluded its investigation and sent an email to Pelenah summarizing the outcome.  (*Id*. at 15, 28.)  The manager stated that they had met with "key witnesses" concerning Pelenah's complaint, and, while she could not share confidential information about other employees, "in light of the concerns raised I can tell you that department leadership has taken appropriate steps [to] address such behaviors moving forward."  (*Id*. at 28.)  She further stated that "UPHS takes such complaints very seriously and will not tolerate inappropriate behavior in the workplace," that HR would "take appropriate steps to ensure that the persons involved understand the requirements of UPHS's policy of Professionalism and Standard of Conducts," and that HR would "monitor the situation to ensure compliance in the future."  (*Id*.)

3

Pelenah contends that, "[d]espite these assurances, [he] continued to experience a hostile work environment as exchanges in the group chatroom (in Teams) were mostly unfriendly, undermining, and bullying towards [him]." (*Id*. at 15.) On July 23, 2024, Williams convened a Teams meeting with Pelenah and stated that Penn Health was terminating him immediately because of absenteeism and performance concerns. (*Id*. at 11.) A letter issued the same day from Anderson confirmed the termination and cited as grounds the three written disciplinary warnings from 2023 and 2024, plus a July 2022 incidence where Pelenah was apparently coached for "Quality of work/not meeting expectations for performance." (*Id*. at 34.) Anderson stated that Pelenah had not improved his performance, and the "most recent occurrence being 7/16/2024 thus the decision to terminate employment." (*Id*.) Pelenah applied for unemployment benefits from the Commonwealth of Pennsylvania's Department of Labor and Industry and was deemed qualified to receive benefits. (*Id*. at 53.)

Pelenah submitted a complaint with the Equal Employment Opportunity Commission ("EEOC") on April 21, 2025, alleging Title VII violations based on retaliation. (*Id*. at 11-13.) He received a Notice of Right to Sue Letter on May 19, 2025. (*Id*. at 7, 44-45.) Pelenah filed this Complaint in federal court on June 8, 2025, alleging violations of Title VII, and seeking damages, costs and fees, interest, and injunctive relief, including reinstatement. (*Id*. at 8.)

II.   **STANDARD OF REVIEW**

Because Pelenah appears to be unable to pay the filing fee in this matter, the Court will grant him leave to proceed *in forma pauperis*. Accordingly, the Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to screen and dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

4

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). This requires the Court to remain flexible, especially considering a litigant's *pro se* status. *Id.* The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* An unrepresented litigant also "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.; see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

5

### III. DISCUSSION

#### A. Title VII Termination Claim

Title VII "proscribe[s] discrimination in employment based on several personal characteristics" including race, color, religion, sex, and national origin. *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)). In general, to plead a plausible claim for employment discrimination, a plaintiff must plausibly allege that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). To survive statutory screening under 28 U.S.C. § 1915(e)(2)(B)(ii), a plaintiff must allege sufficient facts to raise a reasonable expectation that discovery will reveal evidence that his membership in a protected class was "either a motivating or determinative factor" in his employer's adverse employment action against him. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *see also Santos v. Iron Mountain Film & Sound*, 593 F. App'x 117, 119 (3d Cir. 2014) (*per curiam*) (explaining that to survive a motion to dismiss a plaintiff "cannot merely state that he was discharged due to his national origin" and instead "must plead facts that plausibly connect his national origin to his discharge").

Liberally construed, Pelenah's Complaint falls far short of stating a plausible claim for employment discrimination. Pelenah indicated that he is bringing his Title VII claim based on his national origin by checking that box in the form Complaint and noting that he is from Liberia. (*See* ECF No. 1 at 6.) That marked box is the only place in the entire Complaint where he asserts that his treatment and termination were based on his national origin, however, and checking the

box on the form complaint without alleging any corresponding facts is insufficient to raise a plausible inference that his treatment and/or termination were due to his national origin. *Santos*, 593 F. App'x at 119. Pelenah's termination letter describes incidents of tardiness, absenteeism, and the failure to meet professional expectations. (*See* Compl. at 34.) Although Pelenah takes issue with the substance of the disciplinary infractions, he does not allege that his national origin was the motivation behind the citations or that his status in that protected class was "a motivating or determinative factor" in his termination. *See Connelly*, 809 F.3d at 789.

### B. Title VII Hostile Workplace Claim

Pelenah broadly refers to "intimidation" and "harassment," (*see id.* at 9), which the Court understands to be an attempt to assert a hostile work environment claim. He claims that he was subject to Teams exchanges that were "mostly unfriendly, undermining, and bullying towards [him]," (*see id.* at 15). To plead a hostile work environment claim, a plaintiff must allege: (1) he suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014). However, "Title VII imposes no general civility code" as it "does not reach the ordinary tribulations of the workplace, for example, sporadic use of abusive language or generally boorish conduct." *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (internal quotations omitted).

Pelenah's allegations concerning the workplace are vague and conclusory and do not provide the necessary facts linking the alleged improper motivation of national origin

7

discrimination to his treatment in the workplace. In addition, the HR manager's June 2024 post-investigation letter does not support his assertion of an improper motive under Title VII. In that letter, the HR manager recites Penn Health's intolerance for "inappropriate behaviors," and reassures Pelenah that "appropriate steps" were taken "to ensure that the persons involved understand the requirements of UPHS's policy of Professionalism and Standard of Conducts." While those passages generally suggest that other employees may have acted out of step with Penn Health's standards of professionalism, they do not raise an inference of illegally motivated conduct prohibited by Title VII. *See Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249 (3d Cir. 2012) (*per curiam*) (explaining that "[t]he discrimination must be 'because of' the employee's protected status or activity" (quoting *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007)); *see also Vance v. Ball State Univ.*, 570 U.S. at 452. In sum, while Pelenah has characterized behavior by other Penn Health employees and his supervisors as uncivil or even "discriminatory," he has not alleged any specific facts that connect his treatment or termination to his membership in a protected class, and thus he fails to state a plausible Title VII claim on those grounds.

### C. Title VII Retaliation Claim

Pelenah also fails to state a plausible claim that he was retaliated against in violation of federal employment law. A plaintiff seeking to state a claim for retaliation under Title VII must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *See Connelly*, 809 F.3d at 789. Title VII protects "those who oppose discrimination made unlawful by Title VII." *Moore v. City of Philadelphia*,

8

461 F.3d 331, 341 (3d Cir. 2006). Pelenah has not pleaded sufficient factual allegations that he was engaged in actions to oppose unlawful discrimination under Title VII. *See Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011) ("[F]or a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII.") (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del.*, Inc., 450 F.3d 130, 135 (3d Cir. 2006)). In fact, Pelenah only specifies one factual basis for retaliation in his Complaint: that Operations Manager Williams issued disciplinary actions against him because he requested to view his personnel file and the transcript of an interview for another position. (ECF No. 1 at 9, 16). But "[g]eneral complaints of unfair treatment will not suffice," *Davis*, 417 F. App'x at 203 (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995), and there is no allegation that the retaliation was causally related in any way to Title VII-protected activity.

Considering that Pelenah has not pleaded facts raising an inference that discovery would reveal evidence of discriminatory termination prohibited under Title VII, a hostile work environment, or of retaliation taken in response to Title VII-protected conduct, his Complaint will be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Pelenah leave to proceed *in forma pauperis* and will dismiss the Complaint for failure to state a plausible Title VII claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will grant Pelenah leave to file an amended complaint to the extent that he can plead plausible claims under Title VII.[2] The motion for appointment of

---

[2] Pelenah is reminded that merely checking boxes on the form and attaching exhibits is not sufficient to allege plausible claims. Should he choose to amend his complaint, he should present all facts to support his claims in a narrative statement in numbered paragraphs as required by the Federal Rule of Civil Procedure 10.

counsel will be denied as premature. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). An appropriate order follows containing additional instructions as to amendment.

                                        **BY THE COURT:**

                                        */s/ Mary Kay Costello*
                                        **MARY KAY COSTELLO, J.**