IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KERIAN N. PELENAH,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-2972 |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA** | : | |
| **HEALTH SYSTEM,** | : | |
| Defendant. | : | |

## MEMORANDUM

**COSTELLO, J.**                                                                                   **JANUARY 27, 2026**

*Pro se* Plaintiff Kerian N. Pelenah commenced this civil action in June 2025 by filing a Complaint against Defendant University of Pennsylvania Health System ("Penn Health") (ECF No. 1.) In a prior Memorandum and Order, the Court granted Pelenah leave to proceed *in forma pauperis* and dismissed his claims of employment discrimination and retaliation without prejudice for failure to state a plausible claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *Pelenah v. Univ. of Pa. Health Sys.*, No. 25-2972, 2025 WL 2404251, at *4 (E.D. Pa. Aug. 18, 2025). The Court granted Pelenah leave to file an amended complaint if he could allege additional facts to cure the deficiencies identified in his original Complaint. *Id*. Pelenah filed an Amended Complaint, consisting of the Court's preprinted form, along with 104 pages of Exhibits. (ECF Nos. 7 & 8.) The pleading did not comply with the Federal Rules of Civil Procedure largely because he relied solely on the attached Exhibits to state a claim, so the Court dismissed the pleading and permitted Pelenah a final opportunity to amend his complaint. (ECF No. 9.) Pelenah has submitted a Second Amended Complaint. (ECF No. 10.) For the following reasons, the Second Amended Complaint will be dismissed with prejudice.

I.   **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

In September 2021, Penn Health hired Pelenah as a Patient Services Associate at a rate of $20 per hour and placed him in the Department of Ophthalmology. (ECF No. 10-1 at 1.) Pelenah's duties included "assisting the practice/department in maintaining a patient/customer focus, supporting the delivery of high-quality care, sharing a passion for patient and customer-centered care, and assisting in meeting or exceeding patient satisfaction and financial/operational targets." (*Id.*) Sometime in 2023 or early 2024 he was promoted to Access Center Associate II ("ASA II"), with a salary of $22 per hour, and cross-trained with another department in addition to his original assignment. (*Id.* at 4.) The Penn Medicine Access Center apparently recognized him for "good and satisfactory performance and attendance," and Penn Health provided some tuition assistance for at least one or two of the final courses in his doctoral program at the University of Phoenix. (*Id.*) Pelenah was employed for 21 months at Penn Health without any disciplinary actions. (*Id.* at 2.)

In 2023, Pelenah's coordinator encouraged him to apply for a "ASA III" position. (*Id.*) Pelenah asserts that he performed well in the interview but was not selected. (*Id.*) On June 6, 2023, he emailed Elisa Williams, the Operations Manager and head of the interview panel, to request access to his personnel file and a transcript of his job interview. (*Id.*) Williams denied access to his personnel file and responded that she had no written documentation from the interview. (*Id.*) Pelenah contends that "[i]t was precisely at that point that Elisa Williams and other members of the management team began to subject me to excessive monitoring, criticism,

---

[1] The factual allegations set forth in this Memorandum are taken from the Second Amended Complaint, which includes a statement of his claim. (ECF Nos. 10 & 10-1.) The Court may also consider prior documents Pelenah filed as exhibits in this matter, which are part of the public record. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

and progressive actions." (*Id*.)  Williams apparently "reacted by issuing [Pelenah] a written warning allegedly for unscheduled absences and lateness, even though [he] had sufficient accruals that could cover any absences or lateness." (*Id*. at 3.)

In September 2023, Williams issued Pelenah a second written warning for unscheduled absences and lateness. (*Id*.)  In response, Pelenah submitted a managerial decision review request to Human Resources ("HR") complaining about the two written warnings and "a continuation of deliberate acts of harassment, intimidation, and retaliation." (*Id*.)  The HR manager escalated the matter to Megan Phillips, Associate Director of Operations for Patients Access, who convened a virtual meeting on September 17 or 18 to discuss Pelenah's concerns. (*Id*.)  During the meeting, Pelenah requested a transfer because he no longer had confidence that Williams would promote a conducive work environment. (*Id*.)  Ultimately, he was not transferred, nor did he receive any written communication about the final decision from the meeting, but Phillips verbally assured him that his concern would be addressed. (*Id*.)

Pelenah alleges that, prior to his employment with Penn Health, he "had been grappling with several health issues" that "potentially had a significant impact on [his] attendance." (*Id*. at 4.)  At some point in 2022 or 2023, his then coordinator applied for a Family Medical Leave of Absence on his behalf, but the request was denied. (*Id*.)  Williams and the rest of the management team had access to his records and "were fully aware that [his] absences were mostly due to health reasons." (*Id*.)  Pelenah contends that he informed the management team, either directly or on the attendance line, when he needed to be absent for a doctor's appointment or ill health. (*Id.* at 5.)  When that happened, the management team either acknowledged or granted the excuse on site or through the attendance line. (*Id*.)  Instead of using the accruals to cover the absences, the management team issued progressive actions against him. (*Id*.)

3

Pelenah filed a "formal complaint of harassment and discrimination" with HR on April 23, 2024.[2]  (*Id*.)  His complaint raised concerns about "written warnings (adverse action) that had become a pattern and retaliatory tactic employed by the management team following a series of email exchanges in which I had been critical of the management team's actions regarding perceived scheduling errors and attendance issues." (*Id*.)  HR opened an investigation. (*Id*.)  At the conclusion of its investigation, HR communicated to Pelenah summarizing the outcome. (*Id*.)  The HR manager stated Penn Health takes such complaints "very seriously" and that it did not tolerate "inappropriate behavior in the workplace."  (*Id*.)  The manager further communicated that they had taken appropriate steps "to address such behaviors moving forward," although they could not share those steps due to "privacy and confidentiality concerns." (*Id*. at 5-6.)  The HR representative advised him to report any problems in the future, including if he felt "any form of retaliation." (*Id*. at 6.)  Pelenah observes that Williams was "unusually absent" from the call center for two months following the investigation.

Pelenah contends that after he filed a complaint with HR and they investigated, he experienced a hostile work environment "on a weekly, if not daily basis," including comments and emojis in Teams chats that were "mostly unfriendly, undermining, and bullying towards [Pelenah]." (*Id*.)  He claims that the hostility caused him to suffer anxiety, low self-esteem, and physical ailments. (*Id*.)

---

[2] Documents Pelenah previously submitted in this matter reflect that his complaint to HR was preceded by a third disciplinary warning in April 2024. (ECF No. 7-6 at 1.)  A supervisor notified Pelenah verbally and via email that he was being placed on a final written warning for performance and warned that he could be terminated if he failed to meet the protocol to avoid errors or to be on time and logged in at the start of his shift. (*Id*.)  Pelenah's performance was also at issue in July 2022 when Pelenah was apparently coached for "Quality of work/not meeting expectations for performance." (ECF No. 7-5 at 6.)  Pelenah does not reference these events in his Second Amended Complaint.

Penn Health terminated Pelenah on July 23, 2024.[3] (*Id*. at 8.) Pelenah applied for unemployment benefits from the Commonwealth of Pennsylvania's Department of Labor and Industry and was deemed qualified to receive benefits. (*Id*. at 7-8.) Pelenah submitted a formal complaint with the Equal Employment Opportunity Commission ("EEOC") on April 21, 2025, alleging retaliation. (*Id*. at 7.) The EEOC issued a Notice of Right to Sue Letter on May 19, 2025. (*Id*.)

Pelenah filed this civil action asserting discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). After initially checking a box in his original form Complaint indicating that the discrimination was allegedly based on his national origin, in his Second Amended Complaint, Pelenah states that "[c]hecking national origin as the basis for discrimination in my initial complaint was a **genuine error**. Had my national origin been the basis for retaliation, I would have explained further in my statement of the claim or even mentioned that in my complaint to the EEOC." (*Id.* at 1 (emphasis in original).) In the Second Amended Complaint, he did not check any of the provided bases of discrimination, *e.g.*, race, religion, national origin, age, color, or gender/sex. (ECF No. 10 at 6.) He claims that the Defendant retaliated against him and wrongfully terminated him because he reported acts of hostility, harassment, and discrimination by members of the management team. (ECF No. 10-1 at 1.) Pelenah seeks damages and injunctive relief, including reinstatement. (*Id.* at 8.)

---

[3] Documents submitted earlier by Pelenah include a termination letter which cited as grounds the three written disciplinary warnings from 2023 and 2024, plus a July 2022 incident when Pelenah was apparently coached for "Quality of work/not meeting expectations for performance." (ECF No. 7-5 at 6.) In the letter, Penn Health stated that Pelenah had not improved his performance, and the "most recent occurrence being 7/16/2024 thus the decision to terminate employment." (*Id*.)

## II.   STANDARD OF REVIEW

Because Pelenah was granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Second Amended Complaint if it fails to state a claim.   Whether the Second Amended Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether it contains " sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). The Court will assume the factual allegations made in the Second Amended Complaint are true, but it will not accord "threadbare recitals" and "conclusions of law" the same assumption. *Iqbal*, 556 U.S. at 663.

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules— they must abide by the same rules that apply to all other litigants." *Id.*

## III.   DISCUSSION

### A. Title VII Claims Based on Discrimination and Hostile Work Environment

Title VII "proscribe[s] discrimination in employment based on several personal characteristics" including race, color, religion, sex, and national origin. *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)).   "To establish a prima facie case of discriminatory discharge a Title VII plaintiff must show (1) that she is a member of

6

a protected class, (2) she was qualified for the position, (3) she was discharged, and (4) the position was ultimately filled by a person not of the protected class." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1066 n.5 (3d Cir. 1996). Although a *prima facie* case is one way of pleading unlawful discrimination, it is not necessary to plead a *prima facie* case to state an employment discrimination claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) ("A determination whether a *prima facie* case has been made, however, is an evidentiary inquiry – it defines the quantum of proof plaintiff must present to create a rebuttable presumption of discrimination. . . . Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that "raise a reasonable expectation that discovery will reveal evidence of the necessary element." (internal citation omitted)). Rather, a complaint must allege facts that provide fair notice of a plaintiff's claim and demonstrate a plausible right to relief by alleging facts suggesting that the plaintiff was unlawfully discriminated against. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). For hostile work environment claims, a plaintiff must allege: (1) he suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014).

 Pelenah's Second Amended Complaint once again fails to state a claim under Title VII under either theory. Crucially, Pelenah has not alleged that he is a member of any protected

7

class of persons that could form the basis for a termination or hostile workplace claim. In fact, he makes a point in his Second Amended Complaint of disclaiming his initial check mark next to "national origin" in his original Complaint and noted that he never discussed it in his statement of claim or in his EEOC complaint. (ECF No. 10-1 at 1.) Rather, Pelenah never contends that his membership in a Title VII- protected class was a reason behind the alleged behavior or treatment by management team members. Accordingly, Title VII does not provide a remedy for the harassment Pelenah alleged in his HR complaints. *See Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249 (3d Cir. 2012) (*per curiam*) (explaining that "[t]he discrimination must be 'because of' the employee's protected status or activity" (quoting *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007)). Pelenah's failure to plead that he is a member of any protected class in his Second Amended Complaint is fatal to his Title VII claim alleging discrimination that resulted in his termination and his hostile workplace claim.[4] *See Patterson v. AFSCME #2456*, 320 F. App'x 143, 147 (3d Cir. 2009) (*per curiam*) (affirming the dismissal of Title VII

---

[4] In his Second Amended Complaint, Pelenah alleges for the first time that he suffered from health issues that may have negatively affected his attendance. (ECF No. 10-1 at 4-5.) However, health infirmity is not a protected status under Title VII. Further, to the extent that Pelenah would seek to add a new claim under the Americans with Disabilities Act ("ADA") in his Second Amended Complaint, he has neither alleged a disability nor has he alleged that his termination amounted to disability discrimination. *See Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (explaining that, to state a disability discrimination claim, a plaintiff must allege "(1) s/he is a disabled person within the meaning of the ADA; (2) s/he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) s/he has suffered an otherwise adverse employment decision as a result of discrimination." (cleaned up)). Moreover, it appears he did not exhaust such a claim in his EEOC complaint. (ECF No. 1 at 40-41 (pursuing only a retaliation theory)); *Itiowe v. NBC Universal Inc.*, 556 F. App'x 126, 128 (3d Cir. 2014) (*per curiam*) (explaining that, in the employment discrimination context, the ADA requires a plaintiff to pursue administrative remedies pursuant to Title VII before resorting to filing a complaint in federal court); *Lyles v. N. American Dental Grp. LLC*, No. 21-721, 2021 WL 4459738 at *2 (W.D. Pa. Sept. 28, 2021) (dismissing ADA employment discrimination claim for failure to exhaust).

claim where plaintiff failed to plead that she was discriminated against based on membership in a class protected by Title VII). The Court will dismiss these claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Title VII Claim Based on Retaliation

A plaintiff seeking to state a claim for retaliation under Title VII must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). Title VII protects "those who oppose discrimination made unlawful by Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). "[O]nly complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2—constitute 'protected activity.'" *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011) (*per curiam*) (citation omitted).

Pelenah again alleges that he was subjected to "excessive monitoring, criticism, and progressive actions," after he asked to view his personnel file and the transcript of an interview for another position. (ECF No. 10-1 at 2.) He further asserts that Penn Health terminated him in retaliation for lodging complaints with HR. (*Id.*) Yet his conclusory statements referring to harassment and retaliation do not sufficiently allege that he was engaged in any actions to oppose unlawful discrimination under Title VII. *See Davis*, 417 F. App'x at 203 ("[F]or a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII.") (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del.*, Inc., 450 F.3d 130, 135 (3d Cir. 2006)). "General complaints of unfair treatment will not suffice" to plead a retaliation

claim. *Id.* (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)); *see also Sitar v. Ind. DOT*, 344 F.3d 720, 727 (7th Cir. 2003) (finding no protected activity because plaintiff complained that she felt "picked on" but not that she was discriminated against on a Title VII-protected basis). Nowhere does Pelenah plausibly allege facts reflecting that his HR complaints were rooted in a Title VII-protected activity. *See Curay-Cramer*, 450 F.3d at 134-35 (concluding that plaintiff failed to state a retaliation claim for termination under Title VII because plaintiff's pro-choice advocacy actions did not constitute "opposition to an illegal employment practice," and citing *Barber*, 68 F.3d at 701-02 (finding no federally protected conduct where complaint to HR did not oppose a practice made unlawful under the ADEA).). Pelenah's retaliation claim asserted under Title VII will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss the Second Amended Complaint with prejudice for failure to state a plausible Title VII claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). No leave to amend will be granted because the Court concludes that amendment would be futile where Pelenah was previously notified of the defects in his original Complaint, but he failed to fix the errors in his subsequent attempts. *See Nicholas v. SCI Smithfield*, No. 25-2187, 2025 WL 2807762, at *1 (3d Cir. Sept. 30, 2025) (*per curiam*) (citing *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (per curiam) (explaining that "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them")). The request for appointment of counsel (*see* ECF No. 10-2), is denied as moot.

An appropriate order follows dismissing the case.

                      **BY THE COURT:**

                      _____
                      **MARY KAY COSTELLO, J.**